Cooked Foods, Inc. v. Commissioner.
Cooked Foods, Inc. v. Commissioner
Docket No. 7017.
United States Tax Court
1947 Tax Ct. Memo LEXIS 133; 6 T.C.M. (CCH) 876; T.C.M. (RIA) 47223; July 25, 1947
*133 William B. Paul, Esq., and Edward R. Lawrence, Esq., 1409 Park Blvd., Pittsburgh, Pa., for the petitioner. George C. Lea, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Involved in this proceeding is a deficiency in excess-profits tax for the year 1942 in the amount of $41,113.55. The deficiency results from respondent's disallowance as a deduction of bonus payments, totaling $48,488.81, made by petitioner to two of its officers, its sole equal stockholders, as being excessive compensation and a distribution of profits. Findings of Fact Petitioner, a Pennsylvania corporation, organized in 1937, filed its tax returns with the collector at Pittsburgh, Pennsylvania. From its inception Aime Paulin was its president; John T. Christian, its vice president. Each owned one-half of the outstanding stock during the year involved. Prior to the fall of 1941, petitioner was engaged in the business of producing prepared foods, such as poultry, fried chicken, deviled crab, fried fish, salads, and the like, which were sold through grocers, delicatessens, and taverns. From October, 1941, it also canned boned chicken which was sold to the *134 United States Government. Its canned chicken business was undertaken as a result of the European war and the subsequent American lend-lease program, and increased after the United States entered the war. In the fall of 1941, the British Ministry of Food made inquiry of the United States Department of Agriculture as to whether it could acquire through lend-lease 7,000,000 pounds of canned chicken for use in hospitals and dietary kitchens. Due to the shortage of shipping space and refrigeration the chicken was to be packed in tins of not less than one pound. The chicken was wanted within ninety days. Prior to the inquiry of the British Ministry of Food, no more than 250,000 pounds of canned chicken had been produced in the United States in any one year. All previous production had been packed in small glass containers as a luxury item. All previous experience had been with cockerels or old cocks which could not be used for the Government's purpose because they constituted only five percent of the poultry population at that time. Some other source of supply had to be used if the desired quantity and quality were to be obtained. In order to assist the British Government in this *135 matter, the Department of Agriculture in October of 1941 called a meeting in Washington of all the leading poultry producers and contractors for the purpose of determining whether it would be feasible or possible to supply the British with the canned chicken requested. Representatives of many leading food companies, and others, such as poultry producers and suppliers, attended. Christian attended the meeting as a poultry producer, and apprised Paulin of the developments. As a result of the meeting and Christian's offer on behalf of petitioner to cooperate in any program that was developed, petitioner prepared an experimental product. All the experimental work was done by Paulin. It involved many different experiments in a pilot kitchen until a sample satisfactory to the Department of Agriculture was finally developed. Specifications were then prepared by the Department, and invitations to bid were issued to the trade generally. Most of the large producers refused to bid because they considered the program impractical and the risk too great. Petitioner, along with some others, submitted bids, and those of petitioner and three or four others were accepted on October 24, 1941. The *136 initial quantity to be produced by petitioner was 30,000 pounds, but subsequently contracts for substantial additional amounts were received. Until September 12, 1942, all contracts were with the Federal Surplus Commodities Corporation for lendlease to the British; after that date petitioner had a number of contracts with the United States Army, all as follows: Quantity of
Contract
Date of
Date of
Canned
Amount of
Number
Contracting Agency
Offering
Acceptance
Poultry
Contract
FSC 12482
FEDERAL SURPLUS COM-
10/21/41
10/24/41
30,000 Lbs.
$ 34,050
MODITY CORP'N
FSC 15682
FEDERAL SURPLUS COM-
11/11/41
11/13/41
100,000 Lbs.
116,500
MODITY CORP'N
FSC 16790
FEDERAL SURPLUS COM-
11/25/41
11/27/41
100,000 Lbs.
116,500
MODITY CORP'N
FSC 17379
FEDERAL SURPLUS COM-
12/ 9/41
12/11/41
100,000 Lbs.
112,500
MODITY CORP'N
FSC 18251
FEDERAL SURPLUS COM-
12/23/41
12/26/41
100,000 Lbs.
117,000
MODITY CORP'N
$496,550
FSC 18549
FEDERAL SURPLUS COM-
1/13/42
1/15/42
30,000 Lbs.
32,100
MODITY CORP'N
FSC 18638
FEDERAL SURPLUS COM-
1/20/42
1/22/42
125,000 Lbs.
146,250
MODITY CORP'N
W 199 QM 38586
CHICAGO QUARTERMAS-
9/10/42
9/12/42
110,250 Lbs.
115,500
TER DEPOT
W 199 QM 38689
CHICAGO QUARTERMAS-
9/15/42
9/17/42
196,875 Lbs.
206,250
TER DEPOT
W 199 QM 38929
CHICAGO QUARTERMAS-
9/23/42
9/25/42
249,375 Lbs.
261,250
TER DEPOT
W 199 QM 39404
CHICAGO QUARTERMAS-
10/13/42
10/16/42
301,875 Lbs.
306,935
TER DEPOT
W 199 QM 40181
CHICAGO QUARTERMAS-
11/ 9/42
11/12/42
288,750 Lbs.
302,500
TER DEPOT
W 199 QM 40958
CHICAGO QUARTERMAS-
12/11/42
12/14/42
52,500 Lbs.
54,500
TER DEPOT
$1,425,285
*137 In order to fulfill its first contract of October 24, 1941, it was necessary for petitioner to acquire canning equipment and other necessary machines and to establish a complete canning plant, as theretofore it had not engaged in the canning of food products. In the last week of November, 1941, it was finally equipped to begin production of canned boned chicken. During the period that petitioner operated under the aforementioned contracts, Christian's duties consisted of the preparation of bids, negotiation of contracts, procurement of the necessary poultry, and other raw materials. Christian's knowledge of and connections with the poultry business enabled petitioner to secure the large amount of poultry it needed. Since joining petitioner he devoted only about one-fourth of his time to its activities. He had other business interests, being a poultry producer and food broker. In 1942 he also engaged in the wholesale jobbing of poultry and eggs, and in that year also incorporated Christian and Company. His gross income, as reported on his 1942 tax return, was $93,185.77. Paulin devoted his entire time to petitioner's business. His duties consisted of performing the experimental *138 work, leading to the creation of an acceptable sample commodity, laying out the plant, determining equipment requirements, hiring and training employees, as well as complete supervision of all operations. He was experienced in the prepared foods business, having worked in that field both in this country and in Europe, and having had experience in the canning of goose meat. In order to relieve Paulin of some of the work, an assistant was employed by petitioner, at a salary of $60 or $70 weekly, but he remained on the job only about one month. In the third quarter of 1941, petitioner had only 24 employees, whereas in the fourth quarter of that year, it had 138 employees, and during the fourth quarter of 1942, the number of employees increased to 329. Prior to engaging in the canned chicken business, petitioner customarily employed about 10 people. Petitioner's gross sales and its gross income, as reported on its tax returns, from that year of its incorporation through 1942, were as follows. Gross Income
Year
Gross Sales
Per Return
1937
$ 66,569.77
$15,381.65
1938
69,222.65
14,075.59
1939
57,215.87
12,306.49
1940
69,560.23
17,163.43
1941
91,403.41
19,451.64
1942
969,776.23
157,482.23
*139 Of petitioner's gross sales of $969,776.23 for the year 1942, $872,089.39 represented sales of canned boned chicken to the United States Government. Petitioner produced from a small plant more canned chicken in 1942 than any other producer. The canned chicken produced by petitioner was excellent and was used by the United States Army as a standard in obtaining other sources of supply. The price it charged for its canned chicken was at or below that of any one else supplying canned chicken to the Army. For the year 1942 each of petitioner's officerstockholders received a salary of $15,612.50. In addition, Christian received a bonus of $5,000, and Paulin, a bonus of $43,488.81, which were paid pursuant to the terms of a resolution of petitioner's board of directors of January 6, 1942: "Upon motion duly made, seconded and carried the following resolution in regard thereto was unanimously adopted: RESOLVED: That the salaries for the year 1942 of Aime Paulin and John T. Christian, President and Vice President respectively, of the Corporation, be $300.00 per week retroactive to January 1, 1942 and that there be paid to the said officers, in addition thereto, a bonus or bonuses predicated *140 on the results of operations during the year of 1942, the same to be determined and paid during the month of December, 1942, not to exceed 5% of gross sales." Respondent determined that the bonus payments to each of them, but not their salaries, was excessive and disallowed petitioner a deduction therefor, stating: "* * * the 1942 deduction claimed by you for officers' compensation in the amount of $79,713.81 * * * is excessive and unreasonable to the extent of $48,488.81, which amount has been disallowed as a deduction for that year." From 1937 through 1942 petitioner paid salary and bonus to each of its officer-stock-holders, as follows: Paulin
Christian
Total Salary
Total Salary
Year
and Bonus
Bonus
and Bonus
Bonus
1937
$2,741.67
$ 450.00
$ 1,650.00
$ 450.00
1938
2,623.50
0.00
0.00
0.00
1939
3,530.00
950.00
2,986.67
1,950.00
1940
5,602.33
3,000.00
3,371.33
1,000.00
1941
5,122.42
2,080.00
5,862.92
2,080.00
1942
59,101.31
43,488.81
20,612.50
5,000.00
The compensation paid petitioner's officers in 1942 compared favorably percentage-wise to the compensation of officers in similar companies. Except for *141 the liquidating dividend paid upon petitioner's dissolution in 1944, it had never paid any dividend. Compensation in the amount of $30,000 for Paulin and $15,612.50 for Christian is reasonable and commensurate with the services performed. Opinion We have concluded that respondent was justified in disallowing the entire bonus paid to petitioner's vice-president, Christian. Only a small fraction of his time was devoted to petitioner's business, his salary alone (not questioned by respondent) was almost three times his total compensation for the previous year, and we are not satisfied that the burden of his duties was proportionally increased. "Petitioner," in its brief "will concede that its business was war business entirely." Although this does not eliminate the necessity for considering any actual additional burden placed upon petitioner's executives, Canister Co., 7 T.C. 967, it bears upon reasonableness where compensation is based upon gross business, which in turn appears to grow out of war conditions rather than any extraordinary efforts of the corporate officers. Wood Roadmixer Co., 8 T.C. 247. Christian's assignment of duties, particularly the *142 procurement of orders, was apparently little more onerous than in prior years. Petitioner's president, Paulin, however, bore the brunt of petitioner's greatly increased production, and for this reason a considerable bonus seems warranted. The payments to him should, on this record, properly exceed, not only his previous compensation, but also that paid to his associate, Christian. But a bonus nearly equal to his salary, resulting in total compensation of ten times his salary for the prior year, seems at least adequate. We have accordingly disallowed the excess as unreasonable. Decision will be entered under Rule 50.